UNIVERSITY MEDICAL–SURGICAL CLINIC, Victor S. Igal, Paul J. Harph, Robert J. Faust, Ramzi G. Botros, Ed F. Bayouth and Richard O. Jackson, Plaintiffs,

v.

UNITED STATES FIRE INSURANCE COMPANY, Defendant.

Civ. A. No. 5–76–117.

United States District Court,
N. D. Texas,
Lubbock Division.

Aug. 8, 1977.

J. R. Blumrosen, Myrtle D. McDonald, Lubbock, Tex., for plaintiffs.

R. B. Cousins, Thompson, Coe, Cousins & Irons, Dallas, Tex., for defendant.

## MEMORANDUM

WOODWARD, Chief Judge.

The court has received and considered the defendant's motion for summary judgment in the above-styled case and the briefs, depositions, and affidavits in support thereof and in opposition thereto, and the court hereby ORDERS that the motion be GRANTED based on the following uncontroverted findings:

1. On January 7, 1976, the plaintiffs applied for medical liability insurance policies on behalf of the partnership and the individual partner-physicians and remitted a premium payment in the amount of $28,608.00.

2. The policy application signed by the plaintiffs contained the following statement: "The undersigned further recognizes and agrees that such insurance as is applied for herewith is subject to such rates, premium modifications and surcharges as or now or may hereafter be approved by the Texas Board of Insurance."

3. On January 9, 1976, the plaintiffs received an insurance binder contract from the Joint Underwriters Association (JUA) which contained the following special instructions: "It is understood that when the policy is issued, it will be at the rates prescribed and approved by the State Board of Insurance."

4. The plaintiffs relied upon an erroneous Texas Medical Association insurance advertisement in remitting the $28,608.00 premium payment. There is no evidence that the JUA or the defendant caused the advertisement to be sent to the plaintiffs.

5. After notification by the defendant on March 12, 1976 that additional premium payments would be required for the policies to remain in effect, the plaintiffs requested return of their policies and of their original $28,608.00 premium payment.

6. On June 23, 1976, the defendant sent a refund check to the plaintiffs in the amount of $14,410.00 which was calculated correctly according to the short rate cancellation tables. Article 5.20 of the Insurance Code, to which the defendant is subject, prohibits any insurer or its agent from offering any rebate or reduction of the premium after the insurance has been effected.

7. The issue raised by the plaintiffs is whether they were entitled to a full premium refund. The basis of the plaintiffs' refund claim is that there was never a meeting of the parties' minds in order to establish the insurance contract. According to the plaintiffs, the parties failed to reach complete agreement due to the inconsistency between the advertised premium rates and the rates approved by the State Board of Insurance.

8. Based upon the following authority, the court rules that the plaintiffs are not entitled to a full premium refund and that the plaintiffs received the full refund to which they were entitled from the defendant.

In *Republic National Life Insurance Company v. Hall,* 232 S.W.2d 697, 700 (Tex. 1950), the Supreme Court of Texas noted precedent holding that where insurance premiums are fixed by the State Board of Insurance, it is not essential that the parties reach express agreement on the premium rates to be assessed. Construing this earlier holding, the *Republic* court ruled that it was necessary that the subject matter of the premium be in the contract either expressly or by implied reference to official regulations.

Both the insurance application filed by the plaintiffs and the binder contract issued by the JUA in *University Medical* contained express reference to Article 21.49–3 of the Insurance Code and the JUA Plan of Operation, stating that the insurance agreements were subject to the schedule of assessments under these provisions. Thus, the defendants complied with the statutory reference required by the *Republic* court.

In a suit based upon a claim that the parties entered into an oral agreement providing for a lower workmen's compensation premium rate than that established by the State Insurance Commission, the Fort Worth Court of Civil Appeals upheld the higher premiums stated in the written policies, ruling that "where a rate is prescribed by one of the state's regulatory bodies, it is the only rate the parties can contract for." *Associated Employers Lloyds v. Dillingham,* 262 S.W.2d 544, 546 (Tex.Civ.App.1953). The court further held that the rate fixed by the Commission would be a part of every contract regardless of any understanding by the parties. 262 S.W.2d at 546.

In the present case, it is clear under Article 5.82, § 3 of the Insurance Code, that medical liability insurance rates are ultimately fixed by the State Board of Insurance. Further, the summary judgment affidavits support a finding that the JUA premium rates were in fact approved by the State Board of Insurance. Hence, the statutory rate was the one contracted for by the plaintiffs regardless of the plaintiffs' mistaken impression that the advance premium was the only payment required to establish the policy.

In a recent case, the Houston Court of Civil Appeals applied the *Dillingham* rationale to a workmen's compensation premium recovery action in *Silver Threads Inc. v. Insurance Company of North America,* 530 S.W.2d 874, 875 (Tex.Civ.App. 1975). The latter case is closely in point with *University Medical.* In *Silver Threads,* the insurer brought an action against the insured to recover additional premiums due under a workmen's compensation insurance policy. As in *University Medical,* the insured paid an advance premium based upon the insurer's computation which subsequently was revealed to have been erroneously lower than the rate which should have been assessed under the insured's proper classification. In cancelling its coverage and refusing to pay the additional premium due, the insured claimed that if it had known the correct premium rates, it would not have accepted and retained the policy. According to the plaintiff, since the insurer made the erroneous rate representation, the insurer should be estopped from collecting the additional premium. Applying the *Dillingham* rationale, the court held that the insured was bound to pay the premiums computed upon the rates promulgated by the State Board of Insurance Commissioners despite the fact that the erroneous premium assessment upon which the plaintiffs relied was made by the insurer.

Although there are minor factual variations in the present case from *Silver Threads,* the two cases are substantively identical. In an April 13, 1976 letter from the defendant to the plaintiffs, the defendant revealed that the Texas Medical Association advertisement relied on by the plaintiffs listed premium rates for basic limits of liability of $25,000–$75,000 but erroneously labeled the rates as for $100,000–$300,000 liability coverage. Under *Silver Threads,* this error—regardless of who made it—would not alter the amount of the fixed State premium rates. Moreover, paragraph 28 of the insurance application attached to the advertisement and signed by the individual plaintiffs states that a "minimum

deposit premium is required" and must accompany the application. The next sentence states: "It is agreed that the remainder of the annual premium will be paid within twenty days after receipt of the Association's billing." This paragraph is clear and unambiguous—the initial premium payment was only a deposit.

█ The plaintiffs recognize the *Republic* and *Dillingham* decisions but contend that they are inapplicable to the present case because, unlike *University Medical,* the issue of whether the insurance contract was even effected was not before either court. The plaintiffs urge a distinction without a difference. The plaintiffs' offer to establish an insurance contract was evidenced by their signing and mailing the application to the JUA. The subsequent issuance of the binder contract constituted proper acceptance of the plaintiffs' offer by the JUA and thereby completed the contract. As is clear in *Silver Threads,* after the insurance contract is completed, the insured may not later complain that the contract was ineffective because the premium rates represented to the insured were lower than the state approved rates actually charged. Erroneous representations, mutual mistakes, or separate understandings between the contracting parties notwithstanding, the law mandates that where the rate is fixed by the State Insurance Board, the state approved rate is the only rate for which the parties have contracted. Moreover, it is clear from the insurance application and binder contract provisions (set forth in Numbers 2 and 3 of the findings, *supra*) that the plaintiffs expressly agreed to pay the state approved premium rates.

It is, therefore, adjudged and decreed that the briefs, depositions, and affidavits show that there is no genuine issue as to any material fact and that the defendant is entitled to judgment as a matter of law. A judgment will be entered accordingly.