**GREAT AMERICAN INSURANCE COMPANY, Respondent,**

**Crocker Agency, Inc., Respondent,**

v.

**NOVA–FROST, INC., Appellant.**

No. C9–84–1267.

Court of Appeals of Minnesota.

Feb. 12, 1985.

Review Denied May 1, 1985.

Thomas, King, Swenson & Collatz, St. Paul, for Great American Insurance Company, respondent.

Schlagel, Legler, Nelson & Rosenblad, St. Paul, for Crocker Agency, Inc., respondent.

Harvey N. Jones, Hastings, for appellant.

Heard, considered, and decided by WOZNIAK, P.J., and PARKER and HUSPENI, JJ.

## OPINION

WOZNIAK, Judge.

This is a dispute between an insured, its insurer, and agent over premiums on a

liability and workers' compensation policy. Nova-Frost appeals from the judgment entered against it in the amount of the disputed premiums. It contends that the court's findings were erroneous. Both respondents, Great American Insurance and Crocker Agency, were awarded their full claims. We affirm.

## FACTS

Nova-Frost has been doing business since 1977 in heavy-duty plumbing as distinct from residential plumbing. It is involved in digging trenches and sewer and water main construction.

At the end of its first year of operation, Nova-Frost was audited by its then insurer and was required to pay an increased premium. Thereafter, in spring 1978, it changed carriers. Nova-Frost chose Great American for both liability and workers' compensation coverage. The Crocker Agency was Nova-Frost's agent. Crocker reviewed the policy issued by Nova-Frost's former carrier and talked to Nova-Frost personnel. It determined that Nova-Frost was engaged in residential plumbing and estimated the initial premium accordingly, based in part upon review of the former policy. The policies made clear that this initial premium was provisional; it was subject to change with an audit. They provided:

> **PREMIUM.** * * * This policy is issued by the company and accepted by the insured with the agreement that if *any changes in classifications, rates or rating plans is or becomes applicable* to this policy under any law regulating this insurance or because of any amendments affecting the benefits provided by worker's compensation law, such change * * shall be stated in an indorsement issued to form a part of this policy. * * * The premium stated in the declarations is an *estimated premium only.* Upon termination of this policy, the earned premium shall be computed *in accordance with the rules, rates, rating plans, premiums and minimum premiums* applicable to this insurance in accordance with

the *manuals* in use by the company. * *

**INSPECTION AND AUDIT** * * * The company and any rating authority having jurisdiction by law shall each be permitted to examine the insured's payroll records, general ledger, disbursements, vouchers, contracts, tax reports and all other books, documents and records of any and every kind at any reasonable time during the policy period and any extension thereof and *within three years after termination of this policy, as far as they show or tend to show or verify the amount of remuneration or other premium basis, or relate to the subject matter of this insurance.*

(Emphasis added.)

A Great American employee testified that 99% of all commercial policies are written with provisional premiums that are subject to adjustment by amendment. This was undisputed.

In November 1979, about one and one-half years after the policies were issued, Great American audited Nova-Frost. It changed the company's classification from plumbing, meaning residential work, to sewer and water main contractor. Because its operations involved greater risk than residential plumbing, Nova-Frost's premiums were increased. For the insurance year 1978 to 1979, the liability premium was increased $24,378 (subsequently this amount was negotiated down to $18,283) and the workers' compensation policy was increased $10,083. Nova-Frost paid almost all of these increases without dispute. Apparently it considered the $18,283 figure to be too high and paid only $15,000 of that amount.

A few months later, in February 1980, Nova-Frost was audited for the insurance year 1979 to 1980. This resulted in a premium increase totalling $20,683, the amount of Great American's claim. Nova-Frost did not pay the adjustment and changed carriers. Crocker's claim for $3,592.67 was for amounts advanced by the agency to Great American and not paid for

by Nova-Frost. Nova-Frost does not quarrel with the mathematics of these claims.

Nova-Frost advertises in the yellow pages as a sewer contractor. For purposes of impeachment, it was brought out that Nova-Frost is in litigation with the subsequent carrier over the same classification issue. Following an audit, the new carrier had increased Nova-Frost's premiums.

After a trial to the court, judgment was entered in favor of Great American and Crocker for their total claims. Nova-Frost was denied its counter claim for $20,000 based on fraud.

## ISSUE

Did the court err by awarding Great American and Crocker the disputed premiums?

## ANALYSIS

Findings of fact by the court shall not be set aside unless clearly erroneous, "and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Minn.R.Civ.P. 52.01.

The court found that Nova-Frost knew or should have known that its rating as a plumber was incorrect and that it was not misled by Great American's and Crocker's premium quotes.

Crocker's initial premium quote was based in part on a review of Nova-Frost's former policy. The former policy classified the company incorrectly. Nova-Frost did not draw attention to the fact that its primary work was sewer construction. The agent's mischaracterization, therefore, was not unreasonable.

The Great American policy made clear that the initial premium was only an estimate subject to change by an audit. An audit could occur any time within three years of termination. There was evidence that almost all commercial policies are written this way. Nova-Frost was aware of audits. It had been audited by the previous carrier. By adjusting premiums retroactively, the insurer was not doing anything extraordinary or outside of the insurance agreement.

Nova-Frost contends that the purpose of the audit was to alter premiums because of changes in the numbers of employees during an insurance year. It disclaims knowledge that an audit could alter the company's classification that would result in a rate change. It purportedly paid the 1978–1979 increase not realizing that it was due to a change in its classification from plumber to sewer contractor.

While not a model of clarity, the insurance form does indicate that a company's classification is subject to change. Moreover, it indicates that the premium may change in accordance with the "rules, rates, rating plans, premiums * * * [contained in company manuals]." This is fairly explicit notice that premium rates may change. Moreover, it can be inferred that Nova-Frost officers were not naive. They advertised as sewer contractors while attempting to insure themselves under more favorable rates as domestic plumbers. Prior to trial, their premiums had been increased several times by audits. They had gone through three different insurers with similar disputes. Given these facts, the court's determination was not erroneous.

## DECISION

Affirmed.