**NATIONAL FIRE INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**HOUSING DEVELOPMENT COMPANY, Defendant-Appellee.**

**No. 86–7557.**

United States Court of Appeals, Eleventh Circuit.

Sept. 21, 1987.

---

John F. DeBuys, Jr., Corley, Moncus, Bynum & DeBuys, W. Lewis Garrison, Jr., Birmingham, Ala., for plaintiff-appellant.

James A. Harris, Sirote, Permutt, Friend, Friedman, Held & Apolinsky, P.C., Charles R. Driggars, Birmingham, Ala., for defendant-appellee.

Before RONEY, Chief Judge, FAY, Circuit Judge, and ATKINS[*], Senior District Judge.

FAY, Circuit Judge:

This appeal challenges the submission of the affirmative defenses of waiver and estoppel in an action for breach of two workers' compensation insurance contracts. National Fire Insurance Company (hereinafter National Fire) brought a diversity action against Housing Development Corporation (hereinafter HDC) for the recovery of amounts allegedly due as unpaid earned premiums. The jury rendered a verdict for HDC. Because we find that the evidence presented was insufficient for the jury to consider the defenses of waiver and estoppel, we reverse and remand for a new trial.

## I.

## BACKGROUND

In 1981, HDC was primarily engaged in the construction of apartment complexes in Madison County, Alabama. In April, 1981, HDC officials asked John Dobbins, an employee of Boswell & Cooper Inc. and an authorized agent of National Fire, to procure workers' compensation insurance for HDC. The first of two policies now in question provided coverage effective April 24, 1981 through April 24, 1982. The second policy issued by National Fire provided coverage from April 24, 1982 through April 24, 1983.

Prior to the initial policy period, Boswell & Cooper obtained an estimate of HDC's annual payroll. Based on the job descriptions of the employees and HDC's projected payroll, National Fire sent HDC an invoice for an estimated premium of $459 along with a copy of the insurance policy. Under the terms of the agreement:

[t]he premium bases and rates for the classifications of operations described in the declarations are as stated therein and for classifications not so described are those applicable in accordance with the manuals in use by the company. This policy is issued by the company and accepted by the insured with the agreement that if any change in classifications, rates or rating plans is or becomes applicable to this policy under any law regulating this insurance or because of any amendments affecting the benefits provided by the workmen's compensation law, such change with the effective date thereof shall be stated in an endorsement issued to form a part of this policy.

. . . . .

The premium stated in the declarations is an estimated premium only. Upon the termination of this policy, the earned premium shall be computed in accordance with the rules, rates, rating plans, premiums and minimum premiums applicable to this insurance in accordance with the manuals in use by the company.

In addition, the policy stated:

[t]he company and any rating authority having jurisdiction by law shall each be permitted but not obligated to inspect at any reasonable time the workplaces, operations, machinery and equipment covered by this policy.

. . . . .

The company and any rating authority having jurisdiction by law shall each be permitted to examine and audit the insured's payroll records, general ledger, disbursements, vouchers, contracts, tax reports and all other books, documents and records of any and every kind at any reasonable time during the policy period and any extension thereof and within three years after termination of this policy, as far as they show or tend to show or verify the amount of remuneration or other premium basis, or relate to the subject matter of this insurance.

---

[*] Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

Subsequent to the effective date of the policy, Dobbins contacted HDC and discovered that HDC was actively managing apartment complexes. Dobbins asked the HDC controller to review the financial records and make an appropriate adjustment with the estimated payroll. As a result of the modification, an endorsement to the 1981–82 policy was issued on December 15, 1981 indicating a $100,000 payroll for employees who performed maintenance and repair work on buildings owned or operated by HDC. Thereafter, an additional premium in the amount of $2,109 was billed for the increase in the projected payroll.

At the end of the 1981–82 policy period, HDC prepared a self audit and reported an actual payroll of approximately $1,150,000. National Fire renewed the policy for one year and sent an estimated premium in the amount of $2,878 for the 1982–83 policy period. In addition, National Fire prepared a "final" bill of $1,919 for the 1981–82 policy period. When computing the amount of this bill, National Fire mistakenly classified the payroll for HDC's superintendents, resident managers and maintenance employees under the classification of outside salesmen or messengers. This resulted in a substantially reduced premium.

National Fire paid in excess of $15,000 for claims made during the 1981–82 policy period. National Fire decided not to renew the policy after the expiration of the 1982–83 policy period. In January, 1983, a National Fire underwriter discovered that some of the claimants were misclassified. After this discovery, National Fire conducted an audit of HDC's payroll for both policy periods. The audit disclosed that HDC's actual payroll was $1,246,907 for 1981–82 and $1,243,199 for 1982–83. In addition, the National Fire auditors determined that HDC's superintendents, maintenance personnel and resident managers should have been classified under buildings operated by owner or lessee. Since the premium rate applicable to employees classified under this category was substantially higher than the rate applicable to outside salesmen or messengers, National Fire recalculated the earned premium for the 1981–82 policy period and sent a corrected bill requesting an additional $17,127. National Fire also sent HDC an invoice for premiums earned in 1982–83 in the amount of $19,808. HDC refused to pay either bill.

HDC protested the premium invoices and appealed to the South Eastern Conference on Compensation Insurance (SECCI), (the regional rating organization and affiliate of the National Council on Compensation Insurance (NCCI)), claiming that the payroll for the HDC's resident managers was improperly classified. There is no indication that HDC objected to the reclassification of the payroll for HDC's superintendents and maintenance personnel. HDC argued that the resident managers did not fall under the buildings operated by owner or lessee category because their duties were alleged to be exclusively clerical.

SECCI conducted a classification inspection and determined that HDC's resident managers spent ninety-five percent of their time in the office and five percent outside showing apartments and touring the grounds. SECCI officials advised HDC that the buildings operated by owner or lessee was the proper classification because resident managers supervised the repair and maintenance of the apartment facilities. HDC was informed that the procedure for challenging a classification was to request an appeal before the Alabama classification and rate committee. HDC dropped the appeal prior to the scheduled hearing date.

On September 11, 1984, National Fire filed suit against HDC in the United States District Court for the Northern District of Alabama seeking to recover for the unpaid earned premiums for both policy periods. The complaint was amended on November 14, 1984. HDC answered the amended complaint on January 7, 1985 asserting, *inter alia*, the affirmative defenses of waiver and estoppel.

A jury trial commenced on May 5, 1986. The testimony and exhibits offered at trial

revealed that workers' compensation insurance premiums are calculated retrospectively based on categories of the insured's total payroll for the policy period. Employees are classified into categories having a similar risk of injury. The general object of the classification system is to assign one standard classification to the insured's business. Certain occupations within a business, however, are separately classified; the standard exception categories which may remove employees from the standard classification applicable to the business include (1) clerical office employees, (2) outside salesmen and messengers and (3) drivers and chauffeurs. There are over 600 standard industrial classifications. 4 A. Larson, Workmen's Compensation § 92.61 (1987). HDC's business was assigned the classification of Buildings n.o.c. (not otherwise classified)—operation by owner or lessee. The classifications and the standard exceptions are defined in the Manual for Workers Compensation and Employers Liability Insurance published by NCCI.[1]

The major dispute at trial involved the classification of HDC's resident managers. HDC argued that the payroll for these employees should have been classified under the clerical office employee exception. Dobbins, the agent who procured the policies in question, gave the opinion that the resident managers should have been classified under the outside salesmen exception because they spent five percent of their time showing the apartment to prospective tenants. William Wesson, the Director of Field Operations for SECCI, testified that the buildings operated by owner or lessee classification was proper. According to Wesson, the NCCI manual mandates that an employee who performs duties related to more than one classification should be assigned to the higher rated classification when the additional exposure to risk constitutes a regular and frequent part of the employee's duties. Wesson testified that because HDC's resident managers supervised the maintenance and repair of the apartment buildings as a regular and frequent part of their responsibilities, HDC should be obligated to pay the higher rate. Wesson also stated that claims filed by and paid to resident managers in Alabama are classified as a matter of custom and practice under the category of buildings operated by owner or lessee for statistical analysis.

At the close of all the evidence, National Fire's motions for a directed verdict were denied. The district court charged the jury that two contracts between National Fire and HDC existed, and over National Fire's objection, that the defenses of waiver and estoppel were available to bar National Fire's claims pertaining to both policy periods. The jury found for HDC.

## II.

### DISCUSSION

#### A. *Waiver and Estoppel*

National Fire argues that the district court erroneously submitted the defenses

---

1. NCCI is the rating body licensed by the majority of states as the official rating bureau. 4 A. Larson, Workmen's Compensation § 92.61 (1987). The council consists of over 500 insurance companies and state funds. The association gathers statistical data and calculates the risk of injury for employees classified in certain categories. In conjunction with subsidiary rating organizations, NCCI presents proposed rate revisions to state regulatory agencies for approval. The projected profit margin used for computing the proposed premium rates is 2.5%. At the time when the policies in question were in effect, the following premium rates had been approved by the Alabama commissioner of insurance:

| Code | Classification | Premium per $100 of Payroll | |
| --- | --- | --- | --- |
| | | 1981–82 | 1982–83 |
| 8810 | clerical | $ .16 | $ .20 |
| 8742 | salesmen, messengers | .43 | .49 |
| 9015 | buildings n.o.c. | 2.12 | 2.08 |

National Fire and all companies which provided workers' compensation insurance in Alabama were bound by these rates.

of waiver and estoppel to the jury. We agree.

In diversity actions, state law governs substantive issues. *See Federal Savings and Loan Insurance Corp. v. Haralson,* 813 F.2d 370, 374 n. 4 (11th Cir.1987). Because there is no clear Alabama precedent governing the circumstances of this case, a substantial question exists whether waiver and estoppel are available as defenses to claims for earned workers' compensation premiums. Some courts have ruled that since premium rates are prescribed by a state agency, and since the state has an interest in regulating and enforcing the rates applicable to risks associated with certain occupations, the parties to a workers' compensation insurance policy need not reach an express agreement about the rates to be assessed and cannot modify them either intentionally or otherwise through waiver or estoppel. *See University Medical-Surgical Clinic v. United States Fire Insurance Co.,* 435 F.Supp. 278 (N.D.Tex.1977); *Silver Threads, Inc. v. Insurance Company of North America,* 530 S.W.2d 874 (Tex.Civ.App.1975); *Taliaferro v. Insurance Commission,* 142 Cal. App.2d 487, 298 P.2d 914 (1956), *cert. denied,* 352 U.S. 972, 77 S.Ct. 362, 1 L.Ed.2d 325 (1957). The weight of authority from other jurisdictions suggests that upon the discovery of a billing error, an insurer may reclassify the payroll of mistakenly classified employees and retrospectively adjust the employer's premium. *See e.g. University Medical-Surgical Clinic,* 435 F.Supp. at 281; *Taliaferro,* 298 P.2d at 917; *Nationwide Mutual Insurance Co. v. Ed Soules Construction Co.,* 397 So.2d 775, 776 (Fla. 1st DCA 1981); *Great American Insurance Co. v. Nova-Frost, Inc.,* 362 N.W.2d 358, 360 (Minn.Ct.App.1985); *Silver Threads,* 530 S.W.2d at 876. Nevertheless, "the interpretation of state law by a federal district judge sitting in that state is entitled to deference." *Alabama Electric Cooperative, Inc. v. First National Bank of Akron,* 684 F.2d 789, 792 (11th Cir.1982). Accordingly, in the absence of clear authority to the contrary, we will assume for the limited purposes of this appeal that the district court correctly ruled that waiver and estoppel are available as affirmative defenses in Alabama to claims for workers' compensation insurance premiums.[2]

Under Alabama law, "waiver" is the intentional relinquishment of a known right. *Dominex, Inc. v. Key,* 456 So.2d 1047, 1058 (Ala.1984); *Nelson v. Vick,* 462 So.2d 935, 937 (Ala.Civ.App.1984). Estoppel, on the other hand, "is a principle of equity that operates not to create a right nor to impose an obligation, but to prevent an otherwise unjust result." *Williams v. FNBC Acceptance Corp.,* 419 So.2d 1363, 1367 (Ala. 1982). The doctrine applies when "a party takes a position in one instance inconsistent with that party's position in another instance, to another's prejudice." *Id.* The purpose of estoppel is to "promote equity and justice in an individual case by preventing a party from asserting rights under a general rule of law when his own conduct renders [that assertion] contrary to equity and good conscience." *Williams,* 419 So.2d at 1367 (citations omitted) (quoting *Draughon v. General Finance Credit Corp.,* 362 So.2d 880, 884 (Ala.1978)). The essential elements include "(1) knowledge of the facts by the party to be estopped; (2) intention by the party to be estopped that its conduct be acted upon, or such party acts so that the party asserting estoppel has a right to believe that the conduct is so intended; (3) ignorance by the party asserting estoppel of the true facts; and (4) injurious reliance by the party asserting estoppel on the conduct." *Bank of Huntsville v. Witcher,* 336 So.2d 1384, 1387 (Ala.Civ. App.1976).

After reviewing the record, we conclude that there was insufficient evidence

---

**2.** We note that this question might be appropriate for certification pursuant to Rule 18 of the Alabama Rules of Appellate Procedure. Since we are reversing the submission of the defenses of waiver and estoppel under the facts presented, we need not consider certifying the question at this time.

adduced at trial to submit either of the defenses of waiver or estoppel to the jury. In support of the waiver theory, HDC offered evidence suggesting that National Fire misclassified some of HDC's employees and accordingly issued an erroneous bill for the 1981–82 policy period. Aside from this, the record is barren of any evidence indicating that National Fire knowingly and intentionally abandoned, renunciated or relinquished the rights reserved under the insurance policies to inspect HDC's operations, audit HDC's financial records, and make appropriate adjustments to the premiums. While "not a model of clarity," the policy provisions generally provide that the classifications are subject to change and that the premiums are susceptible to retrospective modification. *Great American Insurance Co.,* 362 N.W.2d at 360. The payment of premiums is the essence of insurance contracts. *Pacific Mutual Life Insurance Co. v. Watson,* 223 Ala. 571, 137 So. 414, 416 (1931). While HDC has demonstrated that National Fire was in general very sloppy in its approach to premiums due and committed a substantial clerical error, HDC has failed to offer any indicia of intent on the part of National Fire to relinquish the essence of its bargain. Accordingly, the submission of the waiver defense to the jury was unwarranted.

■ In support of the estoppel defense, HDC argues that in order to promote equity and justice, National Fire should be estopped from reclassifying the payroll of some of HDC's employees and charging a higher premium. The jury evidently found this argument persuasive.[3] Nevertheless, the submission of the estoppel defense to the jury cannot be affirmed because the record is devoid of any evidence that HDC reasonably relied on the words, acts or conduct of National Fire to HDC's detriment.

In order to demonstrate sufficient prejudice to invoke the doctrine of estoppel, a claimant must show a material change of position caused by reasonable reliance upon the party to be estopped. *See Mazer v. Jackson Insurance Agency,* 340 So.2d 770, 773 (Ala.1976). Specifically, a claimant must "so act that he would suffer a loss if [the claimant] were compelled to surrender or forego or alter what [the claimant] has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it...." *Mazer,* 340 So.2d 773 (quoting 3 Pomeroy, Equity Jurisdiction § 805 (5th ed. 1941).

Here, HDC alleges that it would be prejudiced by an "expensive administrative nightmare" if additional premiums were charged because some of the limited partnerships which HDC claims should bear the expense have been dissolved. Brief for Appellee at 31, *National Fire Insurance Co. v. Housing Development Co.,* No. 86–7557 (11th Cir. Mar. 4, 1987). While we recognize that the imposition of additional insurance premiums might create an administrative quandary regarding the apportionment of expenses, the record does not support the proposition that HDC's failure to provide a mechanism for obtaining approval of and reimbursement for any additional costs can be attributed to any *justifiable* reliance upon National Fire's issuance of the erroneous bill for 1981–82.

The record reflects that HDC's potential expense distribution problem directly resulted from HDC's accounting practices and business judgment, and the failure to heed the provisions of the insurance policies. HDC knew or should have known that National Fire could exercise the right to audit HDC's account and adjust the premiums within three years after the termination of the policy periods. This was set forth in clear language. Thus, any "reliance" by HDC upon the alleged represen-

---

**3.** There is no evidence indicating that waiver and estoppel could be available to bar the claims for the 1982–83 policy period. Regarding the 1981–82 premiums, we are sympathetic to HDC's argument principles of .equity should be considered. Nevertheless, HDC is not entitled to equitable relief from liability under the insurance policy because HDC has not proven the essential elements of either the defenses of waiver or estoppel.

tation that National Fire's initial invoice for the 1981–82 policy period would be the "final" billing cannot be considered reasonable or justifiable under the circumstances.

Aside from the premium apportionment predicament, HDC has failed to demonstrate that it was induced into taking prejudicial action. HDC has not shown that it has pledged its credit, incurred any liabilities or parted with anything of value. *See Financial Underwriters, Inc. v. Warren*, 485 So.2d 336, 338 (Ala.Civ.App.1986). Thus, the record fails to show that HDC justifiably changed its position in reliance upon National Fire's words or conduct to HDC's detriment, prejudice or injury. Accordingly, the submission of the estoppel defense to the jury was also unwarranted and National Fire's claims must be remanded for a new trial.

## B. *Directed Verdict*

National Fire argues that the district court erred by denying National Fire's motions for a directed verdict with respect to the earned premiums for groups of HDC's employees whose reclassifications were not in dispute. The district court denied the motions because of the defenses of waiver and estoppel.

■ In diversity cases, federal law governs the propriety of motions for directed verdict. *Neff v. Kehoe*, 708 F.2d 639, 641 (11th Cir.1983). As this court has recently reiterated, district courts and appellate courts should:

consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that

reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied.... A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict ... should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question.

*Reynolds v. CLP Corp.*, 812 F.2d 671, 674 (11th Cir.1987) (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir. 1969) (en banc)). Since we have determined that a new trial of National Fire's claims is necessary, we decline to resolve whether a partial directed verdict should be granted at this time. Nevertheless, if it becomes apparent upon remand that there is no conflict in substantial evidence creating a jury question regarding the proper classifications of HDC's superintendents and maintenance employees, a timely motion for directed verdict should be favorably considered by the district court. The proper classification for HDC's resident managers presents a conflict in substantial evidence which must be resolved by the jury.

## C. *Jury Instructions*

National Fire argues that the district court erred by refusing to give several requested jury instructions concerning the authority of workers' compensation rating organizations in Alabama. The district court ruled that the proposed instructions were not relevant to the issues in the case and might confuse the jury.

■ The purpose of jury instructions is to "give the jury a clear and concise statement of the law applicable to the facts of the case." *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1525 (11th Cir.1985) (quoting *Hanover Fire Insurance Co. v. Sides*, 320 F.2d 437, 444 (5th Cir.1963). While the substance of instructions in diversity cases is governed by state

law, the propriety of a district court's refusal to give a requested instruction is controlled by federal law. *Pesaplastics*, 750 F.2d at 1525. If a requested instruction expresses a correct statement of law, deals with an issue properly before the jury and is not adequately covered by another instruction, the requested charge should be given if its omission would result in prejudice. *See Id.*

Here, the district court failed to make any reference to the Alabama statutory system regulating workers' compensation insurance premiums. The amount of the premiums due was an issue properly before the jury. Under Alabama law, premium rates proposed by workers' compensation rating organizations must be approved by the commissioner of insurance. *See* Ala.Code § 27–13–30 (1986). On remand, we believe the jury should be apprised of the pertinent parts of the premium regulatory system. Although a district judge is afforded "wide discretion as to the style and wording that he may employ," *Andres v. Roswell-Windsor Village Apartments*, 777 F.2d 670, 673 (11th Cir.1985), the jury should be informed that the premium rates which apply to specific classifications of employees are promulgated by the state commissioner of insurance. These statutory provisions are an integral part of the contracts between the parties and not a subject for debate by counsel.

REVERSED AND REMANDED.