[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action the plaintiff Aetna Insurance Company[1]
seeks to recover $33,616.00 from the defendant for workers' compensation premiums. The complaint is in two counts. The first count alleges that the plaintiff provided the defendant CT Page 8905 with workers' compensation insurance coverage for the period from September 15, 1985 through September 15, 1986. The second count seeks to recover on the theory of quantum meruit on the grounds that the defendant received a benefit when the plaintiff provided it with workers' compensation coverage.
After a trial of the action the court finds the facts as follows. At all times relevant to this case the defendant, American Plasterers, Inc. (API), was in the business of performing interior and exterior plastering and fireproofing of structural steel. Prior to September 15, 1985, API received a quotation for various insurance coverages, including workers' compensation insurance, from Connecticut Insurance Group, Inc. (Connecticut Insurance). Thereafter, Connecticut Insurance obtained a workers' compensation insurance policy for API through the plaintiff for the period from September 15, 1985 through September 15, 1986.
The premium owed by the defendant on the aforementioned policy was determined by applying standard rates to estimated wages of API employees. The standard premium rates are set by the National Council on Compensation Insurance based on the risk of on-the-job injuries for various job classifications. The estimated premium for API was based on anticipated annual remuneration of employees in four separate job classifications, with most of the premium charged for employees who performed inside plastering work. The premium rate for inside plastering was 7.9 per $100, of employee remuneration. API estimated its annual payroll expense for inside plasterers to be $332,000. Therefore, the premium charged for that risk classification was $26,228.
The workers' compensation insurance policy issued by the plaintiff to API provided, in relevant part:
5.B. Classifications
 Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.
5.E. Final Premium CT Page 8906
 The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.
Within two weeks after the policy period the plaintiff performed an audit of API's payroll records. This audit revealed that a substantial amount of API's employees were involved in outside plastering work. The premium rate for such work is $14.36 per $100 of employee remuneration.
After the audit API claimed to be unable to provide the plaintiff with an allocation of the portion of the payroll attributable to inside plastering work. Under the rules of the plaintiff and the National Council on Compensation Insurance, which apply pursuant to the specific terms of the policy, when payroll is attributable to work done in two or more risk classifications, and there is no specific allocation to a specific classification, the higher premium rate is applied. Therefore, the plaintiff found that the actual remuneration for plasterers during the policy period was $411,766 and applied the outside plasterer rate of $14.36 to arrive at a final premium for plasterers of $59,130.00.
Connecticut Insurance provided the initial determination of risk classifications which it obtained from API's prior workers' compensation insurance policies. The President of Connecticut Insurance visited API's offices prior to the beginning of the policy term and saw pictures of API's projects, some of which depicted outside plastering work. The plaintiff's inspector visited some of API's projects prior to and during the policy period. Some of those projects involved outside plastering work.
API's vice president was aware that the initial workers' compensation premium was an estimate only and was subject to change after audit. He was unaware of the higher premium rate for outside plasterers. He was also unaware that API should have kept records which separately allocated payroll for inside CT Page 8907 and outside plastering work. He testified that he relied on the workers' compensation premium staying at approximately the estimated level in the bidding on jobs during the policy period.
At trial API made no attempt to prove the allocation of payroll between outside and inside plasterers.
Insurance policies are contracts between the parties and ought to be construed according to the general rules of contract construction. Cunningham v. Equitable Life Assurance Society of the United States, 652 F.2d 306 (2d Cir. 1981), Simses v. North American Co. for Life and Health Insurance,175 Conn. 77, 84, 394 A.2d 710 (1978). The policy in this case allows for a change of premium and even a change of classification after audit. Such provisions have been upheld by courts in other jurisdictions. Great American Insurance Company v. Nobar-Frost, Inc. 362 N.W.2d 358 (1985); National Fire Insurance Co. v. Housing Development Co., 827 F.2d 1475
(11th Cir. 1987).
The defendant claimed at trial, essentially, that the plaintiff should be estopped from recovering the additional premium due to its negligence in failing to initially apply the correct classifications to the defendant's payroll. The defendant has not pled estoppel as a special defense. Other than one statement by the defendant's vice president, that he relied on the estimated-level of premiums in bidding jobs during the policy period, there was no other evidence of the defendant's reliance. Moreover, since the policy clearly permits the plaintiff to change work classifications and premiums after the policy period, any reliance on the estimated policy remaining unchanged after the audit was not reasonable.
The plaintiff based its initial risk classifications for the defendant API's prior workers' compensation policies. Such a practice was not unreasonable.
The defendant further claims that any change in the risk classifications should have been made by endorsement to the policy pursuant to part 5.B. of the policy quoted above. This argument overlooks the provisions of part 5.E., which specifically permit a premium and classification adjustment after the policy ends without any reference to such change being effected through an endorsement.
After the audit plaintiff classified all API's plastering employees as outside plasterers and applied the higher outside plasterer rate based on a rule of the National Council on Compensation Insurance. This court CT Page 8908 treats that rule as establishing a rebuttable presumption that all plastering employees were performing outside plastering work. The defendant could have rebutted that presumption by the presentation of some evidence as to the actual work done by its plastering employees during the period in question. It presented no evidence to permit this court to make any rational allocation of payroll to outside and inside plastering work. Therefore, this court has no choice but to apply the rate claimed by the plaintiff.
The defendant's counterclaim seeks to recover under Connecticut General Statutes 42-110b et seq., the Connecticut Unfair Trade Practices Act, on the grounds that the plaintiff engaged in a "scheme of quoting a lower premium based upon a lower risk classification and then switching the category to more than double the premium." The defendant alleges that this was done with intent to defraud the defendant.
There is no evidence of any intent to defraud on the part of the plaintiff.
While the better practice would have been to conduct some independent investigation in order to assign risk categories, it was not unreasonable for the plaintiff to rely on the categories from the API's prior workers' compensation policies. Moreover, the defendant could have avoided the "doubling" of his premium by producing some evidence as to payroll attributable to lower risk classification employees. It did not do so.
For the reasons set forth above, judgment may enter for the plaintiff on the complaint in the amount of $33,616.00 and interest in the amount of $3099.74. Interest was calculated only on $6301.00, which represents the increase in premium owed by the defendant due to increase in payroll over the estimated level at the lower risk classification ($7.90 per $100).
Judgment may also enter for the plaintiff on the counterclaim.
BY THE COURT
Aurigemma, J.