**SILVER THREADS, INC., Appellant,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Appellee.**

**No. 16556.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Nov. 6, 1975.

Lapin, Totz & Mayer, Larry Huelbig, Houston, for appellant.

Ross, Banks, May, Cron & Cavin, John Mayer, Houston, for appellee.

EVANS, Justice.

This action was brought to collect an additional premium due under a workmen's compensation insurance policy. The defendant, Silver Threads, Inc., asserted the insurer should be estopped to recover the additional premium because of representations contained in the policy at the time it was issued. The trial court concluded that the defense of estoppel was not available to the insured who was bound to the premium rates as promulgated by the State Board of Insurance Commissioners. We affirm.

The policy in question was issued by the insurer, Insurance Company of North America, on a form prescribed by the Texas State Board of Insurance Commissioners for a one-year term beginning September 14, 1971. Under the terms of the policy, Silver Threads paid an advance premium at the beginning of the policy period based upon an estimate of its anticipated earned premium. The actual earned premium was to be determined by a retroactive audit conducted at the end of the policy period.

Silver Threads has always been a nursing home and was correctly classified as such on the face of the policy. However, in computing the amount of the advance premium,

the insurer mistakenly used the codes and rates applicable to hospitals, which resulted in an advance premium charged of only $1,628.00. The audit made at the end of the policy period correctly reflected the total earned premium to be in the sum of $3,156.00. Accordingly, a bill for the $1,508.00 difference between the advance premium and the actual premium was submitted to the insured. Upon receiving such billing, Silver Threads cancelled its coverage and refused to pay the additional charge. This action ensued.

Silver Threads contends that if it had known the correct premium rates charged nursing homes it would not have accepted and retained the policy; that the insurer, having erroneously represented the premium rates to be substantially less than those applicable to nursing homes, should be estopped from collecting any additional premium based upon the rates applicable to nursing homes.

The trial court's conclusion that premium rates set by the State Board of Insurance Commissioners are not subject to alteration by estoppel is based upon three cases: *Associated Employers Lloyds v. Dillingham*, 262 S.W.2d 544 (Tex.Civ.App.—Fort Worth 1953, writ ref.); *Traders & Gen. Ins. Co. v. Frozen Food Express*, 255 S.W.2d 378 (Tex. Civ.App.—Austin 1953, writ ref. n. r. e.); and *Brown & Root, Inc. v. Traders & General Ins. Co.*, 135 S.W.2d 534 (Tex.Civ.App. —Galveston 1939, writ dism. judg. cor.).

In *Associated Employers Lloyds v. Dillingham*, the insured, as a defense to a suit for collection of premiums on two workmen's compensation policies, alleged an oral agreement for a 20% premium discount. Holding that the alleged agreement did not constitute a defense to the suit, the Fort Worth Court of Civil Appeals stated:

> "It was the intent and purpose of the Legislature by these enactments to remove the amount of premiums on workmen's compensation insurance policies from the field of bargaining. The establishment of premium rates is vested ex-

clusively in the Commission and the rates promulgated by the Commission are not subject to alteration by agreement, waiver, estoppel, or any other device . ." (262 S.W.2d 546)

In *Traders & Gen. Ins. Co. v. Frozen Food Express*, the insured sought to defeat a suit to recover premiums under a workmen's compensation insurance policy on the ground that certain truck operators were not its employees, but rather the employees of an independent contractor and that, in any event, the insurance company was estopped to contend otherwise since it knew the insured did not desire insurance coverage for such operators. The court held that the jury's findings on issues relating to waiver and estoppel would not support a judgment for the insured because the establishment of premium rates for workmen's compensation insurance was exclusively vested in the Board of Insurance Commissioners. The court stated that the rates promulgated by the Board are "not subject to alteration by the parties by agreement, estoppel, waiver or otherwise." (255 S.W.2d 386)

In *Brown & Root v. Traders & Gen. Ins. Co.*, supra, the insured by cross-action in a suit brought by the insurer to recover premiums due under a workmen's compensation insurance policy, sought to recover for an overpayment of premiums resulting from a mutual mistake in the premium computations. The insurer argued that it would work a hardship and great inconvenience on insurance companies to require them, long after they had collected the premiums but within the statutory four year period of limitation, to make reparation merely because the Insurance Department might discover errors in the premium computations. In response to this argument this court, through Justice Cody, stated:

> ". . . The error made by the Department in applying a rate can no more give an insurance company the right to a wrong rate, than can an error made by a carrier in applying a rate give a shipper the right to a wrong rate. And

in legal contemplation the company can suffer no harm by being required to carry the actual risk involved at the rate previously prescribed therefor. Moreover, the rule works both ways. While it may be that the greater vigilance of insurance companies in such matters, and the greater expert knowledge possessed by them, keep down errors made against them and in favor of policy holders; yet such errors are inevitable, and then the rule will work for them." (135 S.W.2d 541)

Silver Threads asserts that the rationale of the above cases should not be indiscriminately applied and should be applicable only where there is evidence of a conscious attempt to avoid legal premium rates such as where there is an oral agreement for a discount or a kick back; that it should not be applicable where there is no evidence of conscious wrongdoing and one party may suffer substantially through no fault or negligence on its part. It argues that such reasoning can lead to a gross miscarriage of justice in cases where an innocent insured is required to pay premiums in amounts greatly in excess of that contemplated by the parties due to the insurance company's unilateral mistake. While this argument has appeal, the explanation for the decisions against it may be found in Justice Cody's original opinion in *Brown & Root, Inc. v. Traders & Gen. Ins. Co.*:

"A carrier of workmen's compensation insurance and its policy-holder necessarily contract with each other that the premium rate shall be the duly and lawfully prescribed rate for the risk involved, and none other. They are without power by contract, or otherwise, to alter such prescribed rate. So, if the parties may not consciously and intentionally change the lawfully prescribed rate, their knowledge, ignorance, or negligence is equally incompetent to work any such change. Therefore, the collection by the insurer of a higher or lower rate than that which is duly and lawfully prescribed for the risk involved constitutes a breach of the insurance contract for such insurer to collect only the duly prescribed rate. And, of course, a suit for reparation for overcharges or undercharges is simply and purely a legal action, with no question of reformation of contract, or other equity involved in it. In other words, if a carrier of workmen's compensation, for instance, had collected a lower premium rate than was lawfully prescribed for carrying the risk involved, and later discovered such error, it would certainly not have to prove that it was not negligent in collecting the unlawful rate, in order to entitle it to collect the only rate which the law authorized or permitted it to collect; neither would it be necessary for such insurer to have the policy of insurance reformed to specify such lawful rate, for the contract by force of law intends that the premium rate, and only the premium rate, which applies to carrying the risk involved is agreed rate. . . ." (135 S.W.2d 537)

We hold, as did the trial court, that the insured was bound to pay the premiums computed upon the rates promulgated by the State Board of Insurance Commissioners and that defenses such as estoppel, waiver and mutual mistake are not available in such an action. We recognize, as did the court in *Traders & Gen. Ins. Co. v. Frozen Food Express*, that our decision is not in harmony with *Zurich Gen. Acc. & Liability Ins. Co. v. Fort Worth Laundry Co.*, 63 S.W.2d 236 [Tex.Civ.App.—Fort Worth 1933, no writ (reh. den. at 63 S.W.2d 236)]. However, we believe the rule to be established as set forth in the cases discussed. See also *Glenn H. McCarthy, Inc. v. Knox*, 186 S.W.2d 832 (Tex.Civ.App.—Galveston 1945, writ ref., w. m.); and *Texas Soap Mfg. Co. v. American Auto. Ins. Co.*, 227 S.W.2d 376 (Tex.Civ.App.—Galveston 1950, writ ref. n. r. e.).

Affirmed.