Jack M. WEBB, Special Deputy Receiver for Employers National Insurance Company, Appellant,

v.

REYNOLDS TRANSPORTATION, INC., Appellee.

No. 04–96–00698–CV.

Court of Appeals of Texas,
San Antonio.

June 11, 1997.

Christopher Fuller, Greg Pierce, Scott, Douglass, Luton & McConnico, L.L.P., Austin, for Appellant.

William V. Rainey, Law Offices of William V. Rainey, P.C., San Antonio, for Appellee.

Before HARDBERGER, C.J., and STONE and GREEN, JJ.

## OPINION

HARDBERGER, Chief Justice.

### INTRODUCTION

This case squarely pits basic contract law against insurance regulations. Both parties have rights, both asserted those rights, and each asked for a summary judgment. The trial court ruled consistent with contract law. Prior cases have gone both ways, but on balance, we feel the trial court ruled correctly. We affirm.

### FACTS

Suit was brought by the insurance company, Employers National Insurance Company (Employers), against its insured, Reynolds Transportation, Inc. (Reynolds), for additional premiums Employers said were owed because of an experience rating modification factor. The experience modifier represents a company's expected loss rates while the policy is in force, and is based on the company's actual loss experience for a time period preceding the policy's effective date. Ordinarily, in policies of this type, there is an endorsement that is a part of the policy that indicates that it is subject to modification based on experience ratings. For whatever reason, this policy did not contain an endorsement. So it came as an unpleasant surprise to Reynolds when, three months after it bought the policy, it was billed an additional premium of $54,201. Reynolds refused to pay. After a period of time, Employers sued Reynolds for the additional premium amount, plus attorney's fees in the amount of $8,191.68, alleging breach of contract, sworn account, and quantum meruit.

Complicating matters somewhat, Employers was placed into permanent receivership in February 1994 and Jack M. Webb (Webb) was appointed special deputy receiver. Webb filed a motion for summary judgment, claiming he was entitled to collect the addi-

tional premium because it was required by insurance regulations regardless of whether the usual endorsement was attached. Reynolds answered this summary judgment, and filed its own summary judgment saying the lack of an endorsement authorizing increases based on experience modifications relieved it of any obligation to pay the additional premiums.

## STANDARD OF REVIEW

In two points of error, Webb claims that the trial court erred in denying his motion for summary judgment and granting summary judgment in favor of Reynolds. To prevail on summary judgment, the movant must show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). When both parties move for summary judgment, each party must carry its own burden of establishing a right to judgment. *Cove Investments, Inc. v. Manges*, 602 S.W.2d 512, 514 (Tex.1980); *State Farm Lloyds, Inc. v. Williams*, 791 S.W.2d 542, 549–50 (Tex.App.—Dallas 1990, writ denied). Neither party can prevail solely because the other has failed to discharge its burden. *Federal Deposit Ins. Corp. v. Attayi*, 745 S.W.2d 939, 948 (Tex.App.—Houston [1st Dist.] 1988, no writ). When counter-motions for summary judgment were properly before the trial court, this court should consider all evidence accompanying both motions to determine whether either party's motion should have been granted. *Cluett v. Medical Protective Co.*, 829 S.W.2d 822, 825 (Tex.App.—Dallas 1992, writ denied). Accordingly, when the trial court has granted one party's motion and denied the other's, we review all questions presented. *Nationwide Prop. & Casualty Ins. Co. v. McFarland*, 887 S.W.2d 487, 490 (Tex.App.—Dallas 1994, writ denied).

## DISCUSSION

The issue before us is whether the failure of Employers to include an experience modification endorsement in the original insurance policy defeats Webb's right to recover an additional premium based upon the experience modifier issued for the policy. The insurance policy provides, in pertinent part:

> This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

Moreover, the Automobile Liability Experience Rating Plan issued by the State Board of Insurance provides as follows:

> All policies on risks qualifying for rating under this Plan shall be endorsed to provide for adjustment or modification of the premium rates in accordance with the rules and results produced by the application of the Automobile Liability Experience Rating Plan.

STATE BD. OF INS., AUTOMOBILE LIABILITY EXPERIENCE RATING PLAN § 4(b) (1991).

Reynolds argues in its motion for summary judgment and on appeal that, based on the terms of the policy and the mandate in the rating plan, general contract principles and state insurance law dictate that no premium modifications could be made absent an endorsement to the policy. Reynolds also relies on the Houston Court of Appeals' decision in *National Union Fire Ins. Co. v. Clemtex, Inc.*, 807 S.W.2d 824 (Tex.App.—Houston [14th Dist.] 1991, writ denied), in support of this conclusion. The facts in *Clemtex* were similar to those of the instant case. The insurer in *Clemtex* filed suit against its insured for additional premiums arising from the application of an experience modifier. *Clemtex*, 807 S.W.2d at 825. The court found that no additional premium could be collected because the policy contained no language subjecting the insured to additional premiums arising from experience ratings, and because the insurer failed to attach the legally prescribed endorsement when the policy was issued. *Id.* at 826.

Based on the holding in *Clemtex*, the trial court granted the counter-motion for summary judgment filed by Reynolds. Webb first argues that the trial court erred in

relying on *Clemtex* and granting summary judgment in favor of Reynolds because *Clemtex* failed to recognize that an insurance policy includes, as a matter of law, an agreement to pay the full rate set by the state. In support of this argument, Webb relies on the following cases: *Silver Threads, Inc. v. Insurance Co. of N. Am.*, 530 S.W.2d 874 (Tex. Civ.App.—Houston [1st Dist.] 1975, no writ); *Associated Employer Lloyds v. Dillingham*, 262 S.W.2d 544 (Tex.Civ.App.—Fort Worth 1953, writ ref'd); *Texas Soap Mfg. Co. v. American Automobile Ins. Co.*, 227 S.W.2d 376 (Tex.Civ.App.—Galveston 1950, writ ref'd n.r.e.); and *Glenn H. McCarthy, Inc. v. Knox*, 186 S.W.2d 832 (Tex.Civ.App.—Galveston 1945, writ ref'd w.o.m.). Webb contends that all of these cases hold that an insured must pay the full regulated premium despite any agreement with the insurer to the contrary.

The cases cited by Webb all involve disputes regarding premiums due under workmen's compensation insurance policies. In *Silver Threads*, the insurer sold an insurance policy to a nursing home and mistakenly used the premium rate applicable to hospitals. *Silver Threads*, 530 S.W.2d at 874–75. When the insurer realized its mistake, it sought additional premiums based upon the higher nursing home rate. *Id.* at 875. The nursing home contended that it could not be forced to pay the higher rates retroactively because it had never agreed to pay those rates. *Id.* The court ultimately held that the insured nursing home was bound to pay the higher premiums computed pursuant to the rates set by the State Board of Insurance, despite the unilateral mistake made by the insurer. *Id.* at 876.

In *Dillingham*, the insured alleged an oral agreement for a twenty percent premium discount as a defense to the insurer's suit for collection of premiums on two workmen's compensation policies. *Dillingham*, 262 S.W.2d at 545. The court held that the alleged agreement did not constitute a defense to the suit, and stated:

> [T]he rates promulgated by the Commission are not subject to alteration by agreement, waiver, estoppel, or any other device. As a matter of law, the insurance carrier agrees to collect, and the subscriber agrees to pay, the rate prescribed by the Commission. That rate is a part of every contract, regardless of any understanding to the contrary.... Where a rate is prescribed by one of the state's regulatory bodies, it is the only rate the parties can contract for.

*Id.* at 546.

*Texas Soap* involved a suit by an insurance company to recover back premiums on a workmen's compensation policy generated by an increase from an experience rating modification promulgated after the policy had been canceled by the insured. *Texas Soap*, 227 S.W.2d at 376. The court decided that the insurer could collect the higher rates, applied retroactively, because "appellants by their contract agreed to pay the lawfully prescribed rates, and ... they had no vested right to erroneously prescribed rates...." *Id.* at 378. The court explained that "[t]he compensation insurance carrier, as a matter of law, agrees to collect, and the employer agrees to pay, the lawfully prescribed rate." *Id.*

Finally, in *Glenn McCarthy*, an insurance company's receiver filed suit to collect premiums due under workmen's compensation policies. *Glenn McCarthy*, 186 S.W.2d at 836–37. The insureds claimed they were entitled to certain credits pursuant to a secret agreement with the carrier. *Id.* at 834–35. The court determined that the insureds should be required to pay the full premiums, regardless of the side agreement, because the secret agreement reduced the premiums below the rates lawfully prescribed for the risks involved. *Id.* at 837. The court reasoned that, although insureds must rely on the expertise of insurance agents regarding insurance rates, "since rates are fixed by law, the insurants are charged with knowledge of the rates as fixed by law." *Id.*

While both sides of this dispute have cases that support their viewpoint, we feel that *Clemtex* is the most on point, and the better reasoned. The policy in *Clemtex* was very similar to the one involved in this case. Both contained a set premium. Neither policy had an endorsement providing for adjustments based on future experience ratings. The pol-

icy involved in *Clemtex* stated that the terms of the policy could not "be waived or changed, except by endorsement issued to form a part of this policy." *Clemtex*, 807 S.W.2d at 826. The policy in this case stated that the policy's terms could "be amended or waived only by endorsement ... made a part of [the] policy." There is no difference in these phrases. The *Clemtex* court decided that the "insurer should bear the burden when such an endorsement is not included in the initial policy." We see the matter in the same way. If the absence of the endorsement is simply a mistake of the insurer, then the insurer as the author of the adhesive contract of insurance should have to bear the burden of the mistake. The buyer of the policy should have a right to rely upon the terms of the contract as set forth by the insurer. In a perfect world, no one might be penalized for any mistake, but in the world we live in, the party making the mistake must bear the consequences. Basic contract law so dictates, and it is also equitable.

The four cases relied upon by Webb are all workmen's compensation cases. The policies involved in these cases contained language either in the policy itself or in the attached endorsement that the insureds would have to pay the legally prescribed premiums. In short, the buyer of the policy was put on notice that further rate adjustments were in the offing. As the endorsement was entirely missing in this policy, and the policy does not refer to any endorsement and does state a specific premium, we think a reasonable consumer would expect that is what the policy is going to cost him.

Endorsements were clearly required under the Automobile Liability Experience Rating Plan applicable in this case. A similar plan convinced the court in *Clemtex* to hold for the insured. The plan involved in the *Clemtex* case was a general liability experience rating plan. *Id.* at 825. The *Clemtex* court reasoned that the language of the general liability experience rating plan, which required an endorsement warning of adjustment and modification of premium rates based upon experience modifiers, dictated a result different from that reached in cases such as *Texas Soap. Id.* at 826. The court

reached this conclusion despite the appellant's argument that insurance companies are required by law to charge and collect insurance rates prescribed by the State Board of Insurance. *Id.*

■ We recognize that Webb, acting in his capacity as a special deputy receiver, is not Employers, nor did he make the mistake of not including the endorsement. It is our opinion, however, that he stands in the shoes of Employers and has no greater rights than they would have if they were the party. Webb argues that the failure of Employers to include the proper endorsement rendered the policy an illegal agreement because Texas law required the policy to be experience modified. He contends that, even assuming the insurer would have no right under *Clemtex* to collect the additional premium, the receiver may recover. In support of this contention, Webb relies on *Tankersley v. Durish*, 855 S.W.2d 241 (Tex.App.—Austin 1993, writ denied) and *Glenn McCarthy*. In both of these cases, the insurer had entered into an illegal side agreement with the insured. *See Tankersley*, 855 S.W.2d at 242–43; *Glenn McCarthy*, 186 S.W.2d at 836–37. The insurance policies in these cases reflected or allowed for adjustment to the proper, regulated premium amounts, but the side agreements had the effect of reducing the premiums below the amounts stated on the face of the policies, which resulted in unlawful premium rates being charged. *Tankersley*, 855 S.W.2d at 242–43; *Glenn McCarthy*, 186 S.W.2d at 836–37. Both courts allowed the receiver to prosecute an action to circumvent the side agreements and collect the additional, legally prescribed premiums. *Tankersley*, 855 S.W.2d at 247–48; *Glenn McCarthy*, 186 S.W.2d at 837–38.

Neither *Tankersley* nor *Glenn McCarthy* appear applicable in the instant case. First, in both cases, the receiver was suing on a valid policy charging or allowing for readjustment at the end of the policy period to the legal premium rate. The receivers simply sought to set aside or disaffirm the illegal side agreements. In this case, it is the policy itself that reflects premiums lower than those prescribed by law. Webb, the receiver in this case, seeks to set aside or disaffirm the

insurance policy itself issued to Reynolds and collect the higher rates in the absence of an endorsement authorizing a premium change. The insurance companies in both *Tankersley* and *Glenn McCarthy* consciously made the side agreements in defiance of the law. The lower premium reflected in the policy in this case resulted from an oversight by Employers in failing to attach the proper endorsement, rather than an intentional act that would place the parties *in pari delicto* and prevent Employers from suing to recover the premiums until a receiver was appointed upon insolvency, as was the case in *Tankersley* and *Glenn McCarthy*. We are not persuaded by *Tankersley* or *Glenn McCarthy*.

We affirm the summary judgment entered in favor of Reynolds, which honors the parties' original agreement.