**BROOKSHIRE GROCERY COMPANY, Appellant,**

v.

**Elton BOMER, as Permanent Receiver of Texas Employers Insurance Association, Appellee.**

No. 03–97–00055–CV.

Court of Appeals of Texas, Austin.

Oct. 2, 1997.

Oren L. Connaway, Rentea & Associates, Austin, for Appellant.

Michael S. Wilson, Davis & Wilkerson, P.C., Austin, for Appellee.

Before CARROLL, C.J., and JONES and KIDD, JJ.

KIDD, Justice.

Appellant Brookshire Grocery Company ("Brookshire") challenges a judgment rendered in favor of appellee Elton Bomer, successor to J. Robert Hunter, as Permanent Receiver of Texas Employers Insurance Association ("Receiver"). After a bench trial, the trial court found that Brookshire and Texas Employers Insurance Association ("TEIA") had entered into a void side agreement to obtain an indirect and illegal dividend to a workers' compensation policy and an employers' liability insurance policy entered into in 1986 (collectively the "1986 Policy"). After finding that the original 1986 Policy was valid as written, the trial court ordered Brookshire to pay $270,057 plus prejudgment interest and attorneys' fees for damages in connection with the 1986 Policy.[1] Brookshire appeals on fourteen points of error, challenging the trial court's abuse of discretion, the sufficiency of the findings of fact to support the trial court's legal conclusions, and the court's statutory interpretation and the statutory, legal, and equitable bases for its legal conclusions regarding the validity of the side agreement and the 1986 Policy. We will affirm.

## BACKGROUND

TEIA was an association of policyholders created by the legislature to provide workers' compensation insurance to Texas employers.[2] Brookshire is an employer in Tyler, Texas. TEIA provided workers' compensation and employers' liability insurance to Brookshire for more than thirty-five years. Brookshire accounted for approximately twenty-five percent of the Tyler District's total workers' compensation premium for TEIA.

The coverage under the 1986 Policy began January 1, 1986 and expired January 1, 1987. Under the terms of the 1986 Policy, Brookshire was eligible to receive dividends if declared by TEIA pursuant to Texas Revised Civil Statute Annotated article 8303, § 16 (West 1967). Section 16 specifies the conditions and limitations on TEIA's authority to pay dividends to its subscribers. The relevant provision states:

> The board of directors may, from time to time, by vote, fix the amount to be paid as dividends to its subscribers, in such manner and under such plan as shall be determined by said directors in the exercise of their powers and discretion. No such dividend shall take effect until the same has been approved by the Board of Insurance Commissioners, and no such dividend shall be approved until adequate reserves have been provided by the Association. . . .

The 1986 Policy also contained a retrospective premium endorsement (the "1986 Retro Plan") agreed upon by both parties.[3] A retrospective premium plan normally involves a policy whereby the employer's premium is determined by actual losses paid by the carrier. Under this plan, a front-end premium is charged based upon estimated incurred losses under the policy. At the end of each year, following the policy period, the policyholder may be required to pay additional premiums if losses exceed the estimated pre-

---

1. The trial court also ordered Brookshire to pay damages connected with a similar policy entered into in 1988. However, Brookshire did not appeal the trial court's findings of fact and conclusions of law regarding the 1988 policy. Therefore, this opinion is confined to issues regarding the 1986 Policy.

2. Tex.Rev.Civ. Stat. Ann. art. 8303 (West 1967), Sections 1 to 16A, 22 and 23 *repealed by* Acts 1989, 71st Leg., ch. 112, § 3.

3. A workers' compensation policy allows the insured to choose between a guaranteed cost policy and a retrospective premium policy. The retrospective plan must however be affirmatively elected via an endorsement.

mium. Likewise, if losses are below a certain stated amount, the premium is reduced or returned accordingly.

To effect a retrospective premium plan in a workers' compensation policy, the State Board of Insurance ("SBI") (now known as the Department of Insurance) requires that a Notification of Retrospective Rating be filed with the SBI and the Midwest Council on Compensation Insurance ("MWCCI"). *See* Texas Retrospective Rating Plan Manual Part Three, Section I.B.2. The SBI also requires that an Application for Approval of Proposed Retrospective Rating Values be filed with the MWCCI. *See Id.* at Section III.2.a. One reason for these rigid filing requirements was the fact that at this time in Texas, employers were not permitted to self-insure for workers compensation losses. The Retro Plan was the closest insurance policy to outright self-insurance. TEIA fully complied with both requirements for the 1986 Retro Plan.

Over the course of its business dealings with TEIA, Brookshire had come to expect a retrospective dividend on its workers' compensation policies. However, the record shows that no dividends were declared on the 1986 Policy. In fact, the record indicates that following an audit in April of 1987, Brookshire was billed $122,121 in additional premium under the 1986 Retro Plan. As might be expected, Brookshire was unhappy with this turn of events.

Therefore, after coverage under the 1986 Policy had expired, Brookshire and TEIA entered into a letter agreement (the "Side Agreement") dated September 18, 1987, purporting to amend the 1986 Retro Plan. The Side Agreement was prepared by TEIA's district manager and agreed to by Brookshire's executive vice president. In relevant part the Side Agreement stated:

As you know, TEIA has been deferring dividends to policyholders on a month to month basis. When dividend payments will resume and to exactly who[m] dividends will be paid is unknown.

Since your account is highly valued by our company, our President has authorized us to offer you the following option:

Option: You may elect to have the premium determination for the 1–1–86 to 1–1–87 changed from the discount/ dividend plan to the same retrospective rating plan purchased for the 1–1–87 to 1–1–88 year. This retro plan has a 115% maximum premium and a $250,000 Workers' Compensation and Employers' Liability limitation.

Condition: If you elect to change to the retrospective plan for the 1–1–86 to 1–1–87 year, the change will be final.

The agreed upon modifications in the Side Agreement drastically reduced premiums due under the 1986 Policy.[4] Attached to the Side Agreement was a test calculation showing that under the new premium factors in the Side Agreement, Brookshire would be eligible for a substantial return of premiums based on current incurred losses for the period in question.

The terms of the Side Agreement were not included in a retrospective premium endorsement to the 1986 Policy. Moreover, neither a Notification of Retrospective Rating nor an Application for Approval of Proposed Retrospective Rating Values was filed with the appropriate entities reflecting the retrospective premium plan in the Side Agreement.

Each of the retrospective premium factors in the Side Agreement was applied retroactively to the 1986 Policy period. The first five annual retrospective premium adjustments (1987–1991) were calculated on the basis of the retrospective premium factors in the Side Agreement.

On February 1, 1991, TEIA was placed in Receivership. After re-auditing TEIA's rec-

---

4. The modifications in the side agreement were as follows: (1) a $250,000 loss limitation was used in the computation of retrospective premium, even though the 1986 Retro Plan did not include a loss limitation; (2) a 115 percent maximum retrospective premium was set at zero (0), even though the 1986 Retro Plan employed a 87.9 percent maximum retrospective premium; (3) the minimum retrospective premium was set at zero (0), even though the 1986 Retro Plan employed an 87.9 percent minimum retrospective premium; and (4) a basic premium factor of 0.170 was used in the computation of retrospective premium, even though the 1986 Retro Plan employed a basic premium factor of 0.052.

ords in accordance with the 1986 Retro Plan, the Receiver discovered that modifications to the retrospective premium factors in the Side Agreement resulted in about $270,000 less than the amount that TEIA would have received in premiums if calculated under the original 1986 Policy. In February of 1993, the Receiver disavowed the Side Agreement, calculated a sixth annual retrospective premium adjustment based on the original 1986 Retro Plan, and demanded that Brookshire pay the adjusted premium in accordance with the original 1986 Retro Plan. Brookshire refused to pay and the Receiver filed suit on December 16, 1993.

## ANALYSIS

■ The threshold question presented in this case and reflected in Brookshire's points of error two through twelve is whether the Side Agreement entered into on September 18, 1987, between Brookshire and TEIA was valid and enforceable. We hold that it was not.

■ A side agreement to a valid and enforceable workers' compensation policy which violates a statutory or regulatory requirement is invalid and ineffective. *See Tankersley v. Durish*, 855 S.W.2d 241 (Tex.App.—Austin 1993, writ denied) (promise by insurer's agent that premium charged was flat rate premium and not subject to adjustment was unenforceable as contrary to terms of policy approved by the SBI). Such a side agreement cannot alter or invalidate the terms prescribed in the original underlying insurance policy. *See Silver Threads, Inc. v. Insurance Co. of N. Am.*, 530 S.W.2d 874 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ) (insured bound to pay premiums computed upon rates promulgated by SBI rather than on insurer's mistakenly misrepresented rates when the policy was issued); *Associated Employers Lloyds v. Dillingham*, 262 S.W.2d 544 (Tex.Civ.App.—Fort Worth 1953, writ ref'd) (contract to rebate, directly or indirectly, any part of prescribed premium is illegal and void, and cannot be defense to suit for full premium*); Glenn H. McCarthy, Inc. v. Knox*, 186 S.W.2d 832 (Tex.Civ.App.—Galveston 1945, writ ref'd) (insured required to pay full premiums under policy, regardless of

side agreement, because side agreement reduced premiums below rates lawfully prescribed for risks involved); *English Freight v. Knox*, 180 S.W.2d 633 (Tex.Civ.App.—Austin 1944, writ ref'd w.o.m.) (agreement between insurer and insured altering job classifications and loss experience from lawfully prescribed values is unenforceable); *Brown & Root, Inc. v. Traders & Gen. Ins. Co.*, 135 S.W.2d 534 (Tex.Civ.App.—Galveston 1939, writ dism'd judgm't cor.) (collection by insurer of a higher or lower rate than that which is lawfully prescribed for the particular risk involved constitutes a breach of the insurance contract); *see also* Tex. Ins.Code Ann. art. 5.57 (West 1981) ("any contract or agreement not written into the application and policy shall be void and of no effect.").

■ In *Dillingham*, the insured alleged an oral agreement for a twenty percent premium discount as a defense to the insurer's suit for collection of premiums on two workers' compensation policies. *Dillingham*, 262 S.W.2d at 545. In holding that the alleged agreement did not constitute a defense to the suit, the court relied upon Texas Insurance Code Annotated article 5.57 and reasoned as follows:

It was the intent and purpose of the Legislature by these enactments to remove the amount of premiums of workmen's compensation insurance policies from the field of bargaining. The establishment of premium rates is vested exclusively in the Commission and the rates promulgated by the Commission are not subject to alteration by agreement, waiver, estoppel, or any other device. As a matter of law, the insurance carrier agrees to collect and the subscriber agrees to pay, the rate prescribed by the Commission. That rate is a part of every contract, regardless of any understanding by the parties. The insurer cannot charge more, nor bind itself to take less, than the prescribed lawful rate of premium. A contract to rebate, directly or indirectly any part of the prescribed premium is illegal and void, and cannot be a defense to a suit for the full premium. Where a rate is prescribed by one of the state's regulatory bodies, it is the only rate the parties can contract for. To allow

parties to fix any other rate would impair or destroy the state's regulatory system and its policy of uniform and nondiscriminatory rates, in which system and its policy the public has a paramount interest. *Id.* at 546. We think that such reasoning is even more applicable to the present case. Unlike *Dillingham,* in which the insurance carrier was a private entity, the present case involves TEIA, an entity created by the Legislature and subject to even more regulations than an ordinary private insurance carrier. *See, e.g.,* Tex.Rev.Civ. Stat. Ann. art. 8303, § 16 (West 1967). Since TEIA is a creature of statute, the SBI has even more of an interest in being involved with changes made to a policy it has authorized and approved. Allowing insurance carriers to enter into side agreements that change premium factors not authorized and approved by the SBI is against prevailing public policy. *See Dillingham,* 262 S.W.2d at 546.

Brookshire argues, however, that the above cited cases are distinguishable because the side agreements in those cases contained premium factors that were illegal or fraudulently concealed. Brookshire contends that in the present case the premium factors in its Side Agreement with TEIA were valid and legal, as evidenced by SBI's approval of similar rates used in the 1987 and 1988 policies issued by TEIA to Brookshire. While we agree at least partially with Brookshire's rationale distinguishing the above cases from the present case, it is undisputed that the required filings reflecting the changes to the premium factors in the Side Agreement were not made pursuant to the appropriate rules and regulations of the SBI and the case law. *See* Texas Retrospective Rating Plan Manual Part Three, Sections I.B.2 and III.2.a.; *Dillingham,* 262 S.W.2d at 546. Given that no filings were made, the Side Agreement was at worst void, and at best not binding on the Receiver. *Id.*

Brookshire responds to this argument by stating that it was TEIA's responsibility to make the appropriate filings and that Brookshire should not be penalized for TEIA's failure to comply with the appropriate rules and regulations. This argument is without merit. Brookshire was a sophisticated insurance consumer who should have known that the appropriate filings could not be made pursuant to the rules and regulations of the SBI. First, the rules require that the filing of the Notification of Retrospective Rating Plan and the Application for Approval of Proposed Retrospective Rating Values occur within sixty days after the effective date of the plan. *See* Texas Retrospective Rating Plan Manual Part Three, Sections I.B.2 and III.2.a. Given the sixty-day limitation, a side agreement entered into after the policy had expired would not, and could not, have been accepted or permitted by the SBI. *Id.*

Second, except in situations not present here, the SBI requires that the retrospective rating values applicable at the beginning of the Retro Plan apply for the entire term of the Retro Plan. *See* Texas Retrospective Rating Plan Manual Part Two, Section II.A. TEIA could not make the appropriate filings pursuant to the SBI rules because the retrospective rating values in the Side Agreement were applied *retroactively* to the original 1986 Retro Plan. *Id.*

Finally, we agree with the trial court that the retroactive changes in the Side Agreement were made to give Brookshire, indirectly, a dividend otherwise prohibited under Texas Revised Statute Annotated article 8303, § 16. The record indicates that TEIA informed Brookshire that no dividends could be declared under the 1986 Policy. Because TEIA could not legally declare dividends under the 1986 Policy, it changed the premium factors in the Side Agreement effectively providing Brookshire a "dividend." This conclusion is evidenced by the test calculation attached to the Side Agreement showing that the new premium factors would yield a substantial return of premium to Brookshire. We agree with the trial court that Brookshire should not be able to receive indirectly what it cannot receive directly.

Even if we agreed with Brookshire that TEIA's noncompliance with regulatory provisions should not penalize Brookshire, Brookshire's appeal would still fail because the only method TEIA and Brookshire could have used to bind the Receiver was to endorse the 1986 Policy with the provisions set forth in the Side Agreement. *See Webb v.*

*Reynolds Transportation Inc.,* 949 S.W.2d 364, 366–67 (Tex.App.—San Antonio 1997, no writ). In *Webb,* the receiver for an insurance company sought additional premiums from the insured based on an experience modifier applicable to the policy in question. *Id.* at 364–65. Unfortunately for the receiver, the policy in question did not contain an endorsement indicating that the policy was subject to modifications based on experience rating. *Id.* As in the present case, the policy at issue in *Webb* contained a provision stating that:

> this policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy

*Id.* at 365.[5] Because the court found that no endorsement was made to the policy, it affirmed the insured's summary judgment and refused to allow the receiver to recover additional premiums based on an experience modifier not made a part of the policy. *Id.* at 366–67. Applying *Webb,* we believe that in the present case the only way the Receiver could have been bound by the Side Agreement, even if legal, would have been to have included its terms by endorsement to the 1986 Policy.

Therefore, we hold that the side agreement between Brookshire and TEIA is invalid, illegal, and void under both statutory and regulatory provisions, as well as applicable case law. We further hold that the Receiver was not bound by its terms. Accordingly, we overrule Brookshire's points of error two through twelve.

■ We now address Brookshire's first point of error regarding the statute of limitations. Brookshire claims that the trial court erred in not granting Brookshire's motion for judgment because the Receiver's suit under the terms of the 1986 Policy was filed after

the statute of limitations had expired. The thrust of Brookshire's argument is that any cause of action in the present case accrued in September of 1987, when the Side Agreement took effect. Apparently, Brookshire believes that if a breach of contract occurred, it occurred when the illegal Side Agreement changed the premium factors in the original 1986 Policy. Under this rationale, the four-year limitations period expired prior to suit being filed in December of 1993. We disagree with Brookshire's analysis. Having determined that the Side Agreement was void from its inception, we do not regard the annual adjustments made under the Side Agreements as constituting a breach of contract.

The applicable statute of limitations begins to run when a right of action accrues. *Atkins v. Crosland,* 417 S.W.2d 150, 152 (Tex. 1967); *F.D. Stella Products Co. v. Scott,* 875 S.W.2d 462, 464 (Tex.App.—Austin 1994, no writ). In the present case, the Side Agreement resulted in an adjustment to premiums, but none of the adjustments constituted a final accounting under the 1986 Policy.[6] Pursuant to the 1986 Retro Plan, these annual adjustments were simply *estimates* of premiums due under the 1986 Policy. It was not until the Receiver adjusted the premiums pursuant to the original 1986 Retro Plan and *demanded* a deficiency payment from Brookshire in February of 1993, that the cause of action accrued. Therefore, we hold that the Receiver filed suit well within the limitations period because suit was filed in December of 1993.

Furthermore, the Receiver argues that even if suit was not filed within the limitations period, Brookshire waived any grounds for raising a statute of limitations defense.

---

5. In the present case the language used in the 1986 Policy is as follows:

    The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

6. Part Five of the retrospective Rating Manual outlines premium calculations and payments under a retro plan. The relevant parts are as follows:

    (1) We will calculate the retrospective premium using all incurred losses we have as of a date six months after the rating plan period ends and annually thereafter....
    (2) After a calculation of retrospective premium you and we may agree that it is the final calculation....
    (3) After each calculation of retrospective premium, you will pay promptly the amount due us, or we will refund the amount due you....

The Receiver argues that Brookshire raised the limitations defense as an alternative pleading conditioned upon a condition precedent that never occurred.[7] Although we find the Receiver's waiver argument persuasive, we need not reach the point because we have already decided that the cause of action did not accrue until February of 1993. Brookshire's first point of error is overruled.

In its thirteenth and fourteenth points of error, Brookshire argues that the trial court erred in concluding that the original 1986 Retro Plan was valid. After reviewing the trial court's finding of facts and conclusions of law as well as the rules and regulations issued by the SBI, we conclude that Brookshire's arguments are without merit. We therefore overrule these points of error and affirm the trial court's judgment.

---

7. Brookshire's pleadings were as follows:
In the alternative, if the contract is reformed into a "guaranteed cost" policy or its equivalent, Plaintiff is estopped from suing on the contract by the statute of limitations since the premium due on a 1986 guaranteed cost policy was determined and fixed upon the determination of total 1986 payroll, which occurred no later than April, 1987. More than four years lapsed prior to the appointment of the Permanent Receiver and more than six and a half years lapsed before the filing of the present lawsuit.
The trial court, however, validated the 1986 Retro Plan and never reformed the 1986 Policy to a "guaranteed cost" policy. Therefore, the condition precedent alleged in the alternative pleading never occurred.