**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 10 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PENNSYLVANIA,

      Plaintiff - Appellee,

v.

LSB INDUSTRIES, INC. and EL
DORADO CHEMICAL CO.,

      Defendants - Appellants.

No. 01-6249

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. CIV-99-192-W)**

---

Patrick M. Ryan (Phillip G. Whaley with him on the briefs) of Ryan & Whaley, P.C.,
Oklahoma City, Oklahoma, for Defendants-Appellants.

Michael S. Davis of Zeichner Ellman & Krause LLP, New York, New York, (Kenneth C.
Rudd of Zeichner Ellman & Krause LLP, New York, New York; Daniel S. Sullivan and
Matthew B. Free of Best & Sharp, Tulsa, Oklahoma, with him on the brief) for Plaintiff-
Appellee.

---

Before **SEYMOUR**, **ALDISERT**[*] and **EBEL**, Circuit Judges.

---

     [*] Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit,
sitting by designation.

**ALDISERT**, Circuit Judge.

This appeal by LSB Industries, Inc. and El Dorado Chemical Co. from summary judgment in favor of its insurer, National Union Fire Insurance Co. of Pittsburgh, Pennsylvania ("National Union"), requires us to decide whether the district court erred in determining that the insurance company's demands for unpaid insurance premiums were not barred by the Oklahoma Statute of Limitations. Specifically, we must decide whether the express terms of the mutually consented to retention agreements, which provide for interim premium adjustments up and down, are structured so that the statute of limitations is not triggered until a final premium adjustment becomes due.

**I.**

Appellee is a commercial insurance company that issued policies of insurance to LSB and its subsidiaries. In effect from April 22, 1979, to January 11, 1988, the policies provided general liability, automobile and worker's compensation insurance. These separate retention agreements, entered into in 1982, 1985 and 1987 respectively, contain provisions designed to make premiums paid by Appellants accurately reflect the actual losses experienced by the insurance company. Because insured losses can take years to be finally adjusted, premiums under each retention agreement are adjusted annually, either to require additional payments from the insured or refunds from the insurer.

The total amount due for losses is defined as "Total Incurred Losses," which consist of (1) amounts arising from losses actually paid by the insurance company for

claims made under the policies ("paid losses") and (2) amounts arising from estimates the company has reserved to cover future payments ("reserves"). Total Incurred Losses are then multiplied by a "Loss Conversion Factor" and a tax multiplier. The term "reserves" is defined in the Stipulation as follows: "An amount shown on a loss run as 'reserves' does not represent an amount actually paid by National Union under the applicable policy, but is an amount which National Union has estimated as the amount it expects to pay in the future with respect to existing claims." Appellee's Brief at 4.

The retention agreements provide for the annual on-going computation of retrospective premiums. Upon each retrospective adjustment, Appellee is required to either bill Appellants for additional premiums, if reserves were insufficient to cover actual losses, or to refund premiums to Appellants, if actual losses and reserves are less than what it had previously billed for premiums. Correspondence dated as early as 1984 reveals the parties' disagreements over the insurance policies and the retention agreements. Their disputes involved a variety of issues, including, but not limited to, claim handling, amounts paid on claims, settlement of claims, calculations of reserves reflected in loss runs and calculations of retention premiums.

As a result of differences between the parties, Appellants made no retention premium payments to Appellee after January 1988. Although Appellee made repeated demands for the outstanding retention payments, their efforts were to no avail.

Appellee then filed a complaint on February 12, 1999, alleging that Appellants failed to pay insurance premiums in the amount of $2,085,000.00 owed under the retention agreements. The complaint sought damages for breach of contract and an open, mutual or running account.

On December 9, 1999, the parties entered into a settlement agreement, which resolved all of the issues in this dispute but one. They could not agree whether Oklahoma's Statute of Limitations barred any part of Appellee's claim. The parties agreed to seek a judicial determination of that issue upon stipulated facts.

On a motion for summary judgment, the district court determined that no part of Appellee's claim was time-barred. In making its determination, the court relied on the plain language of the retention agreements and the interpretation of a similar insurance policy in <u>Brookshire Grocery Co. v. Bomer</u>, 959 S.W.2d 673 (Tex. Ct. App. 1997). The Texas court's decision turned on the termination clauses of each retention agreement; clauses that provided that final premiums may not be computed, except by mutual agreement, until all claims have been fully settled.

## II.

In the case at bar, the termination clause of the 1982 Retention Agreement provides:

> Such computation of the premium for the three year period shall be final if all claims have been closed or it is mutually agreed between [National Union] and [LSB] that the Final Premium will exceed the Maximum Premium.

If such computation is not final, losses shall be valued annually thereafter until such time as there are no new or outstanding claims, or a mutual agreement is reached between [National Union] and [LSB].

Appellants' Appendix, Vol. I at 16.

The 1985 Retention Agreement provides:

The premium so computed shall be the final retention premium if:

1) All claims have been closed and no new claims have been reported for a period of 66 months after the expiration of the policy;

2) It is apparent that the premium computed will exceed the maximum retention premium, or

3) A mutual agreement is reached between [National Union] and [LSB].

If such computation is not final, losses shall be valued annually thereafter until the final adjustment is calculated.

Appellants' Appendix, Vol. I at 22.

The termination clause of the 1987 Retention Agreement provides:

The premium so computed shall be the final retention premium if:

1) All claims have been closed and no new claims have been reported for a period of 78 months after the expiration of this policy;

2) It is apparent that the premium computed will exceed the maximum retention premium, or

3) A mutual agreement is reached between [National Union] and [LSB].

If such computation is not final, losses shall be valued annually thereafter until the final adjustment is calculated.

Appellants' Appendix, Vol. I at 27.

## III.

The district court had jurisdiction of the underlying action pursuant to 28 U.S.C. § 1332(a).  National Union is incorporated in Pennsylvania and has its principal place of business in New York.  LSB Industries, Inc. and El Dorado Chemical Co. are incorporated in Delaware and have their principal place of business in Oklahoma City, Oklahoma.  Oklahoma law controls this diversity action.  The appeal was timely filed pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure.  This court has jurisdiction pursuant to 28 U.S.C. § 1291.

"We review a district court's grant of a motion for summary judgment de novo, applying the same standard as the district court."  Sports Unlimited, Inc. v. Lankford Enter., Inc., 275 F.3d 996, 999 (10th Cir. 2002) (citing Trujillo v. Univ. of Colo. Health Sci. Ctr., 157 F.3d 1211, 1213 (10th Cir. 1998)).  "Summary judgment is appropriate only if the admissible evidence shows 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  Id. (citing Rule 56(c), Federal Rules of Civil Procedure).

"A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit."  Id.  (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented."  Id.

"The burden of showing that no genuine issue of material fact exists is borne by the moving party." Id. (citing Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998)). "When, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden by pointing to 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" Id. (citing Adler, 144 F.3d at 671).

"[The appellate court] draw[s] all reasonable inferences in favor of the nonmoving party." Id. (citing Curtis v. Okla. City Pub. Sch. Bd. of Educ., 147 F.3d 1200, 1214 (10th Cir. 1998)). "If no genuine issue of material fact is in dispute, this court then determines whether the substantive law was correctly applied by the district court." Id. (citing Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996)).

## IV.

Appellants contend that the district court erred in determining that Appellee's demands for unpaid insurance premiums are not barred by the relevant Oklahoma Statute of Limitations. The parties agree that the applicable statute of limitations is Title 12, § 95(1) of the Oklahoma Statutes[1], but they disagree as to the precise time Appellee's cause of action accrued, and consequently, when the limitations period began to run.

---

[1] Section 95(1) provides that actions upon written contracts or agreements "can only be brought within . . . [five (5) years] after the cause of action shall have accrued, and not afterwards . . . ." OKLA. STAT. tit. 12, § 95(1).

"[A] cause of action accrues at the time when a plaintiff first could have maintained [its] action to a successful conclusion." Okla. Brick Corp. v. McCall, 497 P.2d 215, 217 (Okla. 1972) (internal citations omitted). Appellee contends that its demands fall within the statute of limitations period because the express language of the 1982 Retention Agreement mandates that its cause of action did not accrue until "all claims have been closed or it is mutually agreed between . . . [National Union] and . . . [LSB] that the Final Premium will exceed the Maximum Premium[,]" or "until such time as there are no new or outstanding claims, or a mutual agreement is reached between . . . [the parties]." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. LSB Indus., Inc., No. CIV-99-192-W, Order at 7 (W.D. Okla. Jun. 1, 2001).

Similarly, Appellee argues that its causes of action under the 1985 and 1987 Retention Agreements did not accrue until "[a]ll claims have been closed and no new claims have been reported for a period of 66 [or 78] months [respectively] after expiration of the polic[ies], . . . [i]t is apparent that the premium computed will exceed the maximum retention premium, or . . . [a] mutual agreement is reached between . . . [the parties,]" or "until the final adjustment is calculated." Id.

**A.**

The district court agreed with Appellee and concluded that the statute of limitations did not begin to run until a final premium may be calculated under the retention agreements' express terms. In so holding, the district court relied on the

- 8 -

reasoning of the Texas Court of Appeals in <u>Brookshire Grocery Co. v. Bomer</u>, 959

S.W.2d 673 (Tex. Ct. App. 1997). The Texas court dealt with the applicability of a

statute of limitations to a retrospective premium plan with the same substantive

provisions as the retention agreements at issue here. The agreement in <u>Brookshire</u>

required the insured to pay a "front-end" premium based on "estimated incurred losses."

<u>Id.</u> at 674. At "the end of each year, following the policy period, the policyholder [was]

required to pay additional premiums if losses exceed[ed] the estimated premium." <u>Id.</u>

Similarly, the policy required the insurer to refund payment if actual losses were less than

previously expected. <u>Id.</u> at 675.

The Texas court determined that because these interim retrospective premium

adjustments were mere estimates to provide a measure of security until a final obligation

had been calculated, the statute of limitations could not begin to run until there was a final

adjustment. The court reasoned:

> In the present case, the Side Agreement resulted in an adjustment to
> premiums, but none of the adjustments constituted a final accounting under
> the 1986 Policy. Pursuant to the 1986 Retro Plan, these annual adjustments
> were simply <u>estimates</u> of premiums due under the 1986 Policy. It was not
> until the Receiver adjusted the premiums pursuant to the original 1986
> Retro Plan and <u>demanded</u> a deficiency payment from Brookshire in
> February of 1993, that the cause of action accrued.

<u>Id.</u> at 678 (internal citations omitted) (emphasis in original). The <u>Brookshire</u> court

determined that because under the controlling contract, each retrospective adjustment was

merely a benchmark along the way to a subsequent final calculation, the statute did not bar a later or final premium adjustment until such adjustment was actually made.

**B.**

Similarly, the retention agreements at issue in the case at bar explicitly provide for an ongoing annual computation of premium adjustments, but only one final premium payment. It would appear that, like the situation in <u>Brookshire</u>, the express language of the agreements dictates that the Oklahoma Statute of Limitations was not triggered until the final premium was calculated. Among the reasons for utilizing the final calculation concept is one that inures to the benefit of the insured, where, for example, the insured would be entitled to receive credits for premiums previously paid for losses, if National Union was able to collect through subrogation from third parties responsible for some of the losses. That finality was achieved, at least with regard to the 1985 and 1987 Retention Agreements, on May 15, 2000, when the Stipulation resolved all issues concerning the amount of premiums earned.

However, a question remains as to when the premiums charged under the 1982 Retention Agreement became final. Appellants contended at oral argument that there was a time prior to the commencement of the lawsuit when all claims under this agreement had been finalized. Consequently, they argue that even under Appellee's formulation, recovery of the $458,883.00 under the 1982 Retention Agreement is time barred.

Appellee did not agree.  At oral argument it contended that although the payments associated with the 1982 Retention Agreement are closed today, at the time the lawsuit was filed in 1999, they were still pending.  To support its position, Appellee referred the court to certain exhibits attached to the Stipulation of Facts and Documents jointly filed by both parties on May 15, 2000.  See Appellants' Appendix, Vol. I at A 255.  These exhibits summarize the amount, date and type of payments made to various claimants for different losses incurred.  Yet, the documents do not satisfy us as to this issue.  They fail to clarify whether the disbursements to the insureds were a result of coverage under the 1982, 1985 or 1987 Agreement, or some combination of the three.[2]

We decide that additional fact-finding is necessary on the status of claims under the 1982 Agreement at the time the complaint was filed.  It will be necessary to remand this case to the district court to determine this limited issue.  Upon its findings, the court can then determine what claims under the 1982 Agreement had been closed, if any, and then make a determination of the application vel non of the statute of limitations.

---

[2] The relevant portion of the stipulation agreement states:

> The computer printout attached hereto as Exhibit "K" (the "Printout") reflects all the losses paid or intended to be paid by National Union and all the credits issued by National Union during the period January 13, 1994 through August 18, 1999 with respect to any claims covered by policies issued by National Union to the LSB Companies, including those policies subject to the Retention Agreements which are the subject of this action.

Appellants' Appendix, Vol. I at A 47.

## C.

In the view we take, we perforce reject Appellants' contention that each adjustment was an "installment," and that the statute of limitations was triggered by each such adjustment. They argue that when an obligation is payable in installments, a cause of action accrues under Oklahoma law as each installment becomes due, even though subsequent installments have not yet become due. See Kouri v. Toma, 175 P.2d 975, 975-976 (Okla. 1947). Thus, according to Appellants, when the limitations period has run as to one or more installments, recovery of that portion of the obligation is barred, even though the balance of the obligation remains recoverable. See Okla. Brick Corp., 497 P.2d at 217 ("plaintiff cannot recover the amount of the first three installments, but is entitled to recover only the final installment").

The content of their major premise is true. For purposes of Oklahoma law, an "installment" is "a different portion of the same debt payable at different successive periods as agreed." BLACK'S LAW DICTIONARY 798 (6th ed. 1990); see also Turk v. French, 210 P.2d 154, 156 (Okla. 1949). From this they move to their next premise – that "[e]ach of the payments required by the retention agreements related to the 'same debt,' namely the retention premium." Appellants' Brief at 13. They then contended that because "[e]ach agreement declared 'different portions' of retention premium to be payable at successive one year intervals," the adjustments at issue in the retention agreements were really installments capable of being time-barred individually. Id.

- 12 -

The logical analysis fails, however, because their minor premise is flawed. Interim adjustments of a premium, up or down, are not the "same debt," and are therefore not installments of a fixed obligation. These retrospective adjustments are "valuations," which merely measure reserves, and are something completely distinct from the final payment. We agree with the Brookshire court that the annual adjustments were simply estimates. Brookshire, 959 S.W.2d at 678.

We therefore cannot accept the installment argument. As stated before, the plain language of the retention agreements calls for first, an initial estimated payment, followed by an annual adjustment based on estimated reserves for unpaid losses and a final adjustment once all insured claims are paid and reserves are zero. The annual adjustments are wholly different from the final adjustment and therefore, may not be individually time-barred by the statute of limitations.

### D.

In light of the view we take, it is unnecessary to consider Appellee's alternative argument that these retention agreements constitute mutual, open accounts.

\* \* \* \* \*

Accordingly, we hold that the Oklahoma Statute of Limitations does not bar National Union's demand for premiums for (1) all demands under the 1985 and 1987 Agreements and (2) all demands under the 1982 Agreement that were not closed when the complaint was filed. We therefore affirm completely the district court's treatment of the

obligations arising out of the 1985 and 1987 Agreements. We remand these proceedings for the limited purpose of determining what claims under the 1982 Agreement, if any, were still open at the time the complaint was filed with a direction that the district court hold that the statute of limitations does not apply to them.

We affirm the judgment of the district court as to premiums under the 1985 and 1987 Agreements. We vacate that portion of the judgment relating to the 1982 Agreement and remand to the district court for further proceedings in accordance with the foregoing.